UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAYLEN M. YELDER,

                Petitioner,                    Case No. 18-CV-11012

v.

                                   Honorable Thomas L. Ludington

T. TRIERWEILER,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Jaylen M. Yelder, a state prisoner in custody of the Michigan Department of Corrections, filed a pro se application for the writ of habeas corpus under 28 U.S.C. § 2254. He challenges his Wayne County, Michigan convictions for assault with intent to commit murder (AWIM), Mich. Comp. Laws § 750.83, carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. Petitioner alleges as grounds for relief that: his trial attorney was ineffective for failing to consult and present an expert witness on identification testimony and for failing to impeach a complaining witness with the witness's prior testimony; the trial court abused its discretion by rendering a guilty verdict even though the prosecution failed to prove all the elements of AWIM; the trial court abused its discretion when it permitted the prosecutor to bolster and vouch for her witnesses, despite defense counsel's objection; and "good cause" exists for the failure to raise all these issues on appeal or in a prior motion, and prejudice resulted from the irregularities that support his claims for relief. Having read the pleadings and state-court record, the Court concludes that the state appellate court's adjudication of Petitioner's two claims about

trial counsel was objectively reasonable and that Petitioner's other claims are procedurally defaulted. Accordingly, the Court will deny the habeas petition.

## I.

The Michigan Court of Appeals briefly summarized the facts leading to the charges against Petitioner as follows:

> This case arises from a shooting that took place when four young men, Devaunte McKinney, Dwight Mahone, Aaquil Cleary, and Willie Quarles, drove to a banquet hall in Detroit to attend a graduation party. After they arrived, they stood in the street outside of the hall speaking with friends inside of a parked car. The group of friends eventually noticed three men walking toward them down the street. When the three men were approximately 25 feet away, they began shooting and McKinney, Mahone, Cleary, and Quarles ran toward a CVS nearby to seek shelter. Cleary, McKinney, and Mahone were all shot several times before making it inside the CVS.

*People v. Yelder*, No. 325101, 2016 WL 1445318, at *1 (Mich. Ct. App. Apr. 12, 2016).

Petitioner waived his right to a jury trial and was tried before a circuit judge in Wayne County Circuit Court where all four complainants testified. Cleary and McKinney identified Petitioner as one of the shooters. Petitioner's defense was that it was a case of misidentification. At the conclusion of the bench trial, the trial court found Petitioner guilty as charged of four counts of AWIM, one count of carrying a weapon with unlawful intent, and one count of felony-firearm.

Petitioner was nineteen years old at his sentencing on November 21, 2014. The trial court sentenced him to concurrent terms of 171 to 264 months (fourteen and one-quarter to twenty-two years) in prison for each assault and a concurrent term of 24 to 60 months (two to five years) for carrying a weapon with unlawful intent. The court sentenced Petitioner to a consecutive term of two years in prison, with 163 days credit, for the felony-firearm conviction. ECF No. 9-7 at PageID.396-398; ECF No. 9-10 at PageID.444.

In an appeal of right, Petitioner argued through counsel that he was denied his constitutional right to effective assistance of counsel by his trial attorney's failure (1) to consult, retain, and present an expert witness on eyewitness identifications, and (2) to use testimony from the preliminary examination to impeach one of the complainants. Petitioner also alleged that he was entitled to have the judgment of sentence corrected because his sentence for felony-firearm was running consecutively to his sentence for carrying a firearm, which was not a predicate felony for the felony-firearm conviction.

In a pro se supplemental brief, Petitioner alleged that (1) he was denied effective assistance of counsel by trial counsel's failure to follow through with an alibi defense, (2) his trial counsel's ineffective assistance prevented him from proving actual innocence, (3) trial counsel's cumulative errors violated his fundamental rights, and (4) trial counsel's strategic decision not to pursue an alibi defense was objectively unreasonable. The Michigan Court of Appeals disagreed with Petitioner's arguments and affirmed his convictions, but remanded the case for the ministerial task of correcting the judgment of sentence. *See Yelder*, 2016 WL 1445318.

Petitioner subsequently raised his claims about trial counsel in an application for leave to appeal in the Michigan Supreme Court. On October 26, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to the court. *See People v. Yelder*, 886 N.W.2d 624 (Mich. 2016).[1]

On March 30, 2017, Petitioner filed a pro se motion for relief judgment in the state trial court. He argued that: (1) the trial court abused its discretion and violated his rights to due process and equal protection of the law by rendering a guilty verdict despite the prosecutor's failure to

---

[1] Justice David F. Viviano did not participate in the decision due to a familial relationship with the trial judge.

prove all the elements of AWIM; (2) the trial court abused its discretion and deprived him of due process and equal protection of the law by permitting the prosecutor to vouch for witnesses, despite defense counsel's objection; and (3) defense counsel failed to assert all substantial defenses, and appellate counsel failed to present all appealable issues and move for a new trial, and therefore, he established "good cause" for failing to raise all his issues on appeal and actual prejudice from the irregularities that supported his claims for relief.

The trial court found no merit in Petitioner's challenge to the sufficiency of the evidence and the prosecutor's conduct. The court rejected Petitioner's claim about trial counsel on the basis that Petitioner raised a claim about trial counsel in the appeal of right, and he was barred from re-litigating the claim again on post-conviction review. Finally, the court rejected the claim about appellate counsel because there was no merit in the claims that appellate counsel failed to raise. The court concluded that Petitioner had failed to demonstrate "good cause" and "actual prejudice" under Michigan Court Rule 6.508(D)(3). *See People v. Yelder*, No. 14-005519-01 (Wayne Cty. Cir. Ct. Aug. 16, 2017) (ECF No. 9-9).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Yelder*, No. 340519 (Mich. Ct. App. Nov. 22, 2017) (ECF No. 9-12 at PageID.809). Petitioner then attempted to file an application for leave to appeal in the Michigan Supreme Court. On March 5, 2018, a deputy clerk for the Michigan Supreme Court returned Petitioner's pleading without filing it because the papers were untimely under Michigan Court Rules 7.305(C) and 7.316(B). ECF No. 9-13 at PageID.868.

Finally, on March 28, 2018, Petitioner filed his Habeas Corpus Petition. His claims read as follows:

Ground One:  Mr. Yelder was denied his Sixth Amendment right to effective assistance of counsel where his trial attorney failed to consult, retain, and present an expert witness on the unreliability of the eyewitness identifications in this case.

Ground Two:  Mr. Yelder was denied his Sixth Amendment right to effective assistance of counsel where his trial attorney failed [to] use testimony from the preliminary examination to impeach the complainant regarding the identification procedure where the identifications [were] the key issue at trial[;] trial counsel['s] failure prejudiced Mr. Yelder.

Ground Three:  Mr. Yelder was denied due process and equal protection of [the] law when the trial court abused its discretion by rendering [a] guilty verdict although the prosecution failed to prove all elements.

Ground Four:  Mr. Yelder was denied his right to due process and equal protection of [the] law, where the trial court abused its discretion by allowing and permitting [the] prosecutor['s] line of questioning [over] defense objection.

Ground Five: Mr. Yelder has established good cause for failure to raise these issues on appeal or in a prior motion, and actual prejudice from the irregularities that support his claims for relief.

ECF No. 1 at PageID.16, 18, 20–21, 23.

Respondent argues that habeas relief is not warranted on Petitioner's first and second claims "because the state appellate court's rejection of those claims was not an extreme malfunction." ECF No. 8 at PageID.89. Respondent maintains that habeas "relief is not warranted on [Petitioner's] remaining claims because the claims are procedurally defaulted and without merit." *Id.* at PageID.104.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191

(2018) (quoting 28 U.S.C. § 2254(d)). The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established
> precedent if the state court applies a rule that contradicts the governing law set forth
> in [Supreme Court] cases" or "if the state court confronts a set of facts that are
> materially indistinguishable from a decision of [the Supreme] Court and
> nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06

(2000) (alterations added)).

> [U]nder the unreasonable application clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the facts of
> the prisoner's case. The unreasonable application clause requires the state court
> decision to be more than incorrect or erroneous. The state court's application of
> clearly established law must be objectively unreasonable.

*Id.* at 75 (internal quotations and citations to *Williams v. Taylor*, 529 U.S. 362 (2000) omitted).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'

and 'demands that state-court decisions be given the benefit of the doubt[.]'" *Renico v. Lett*, 559

U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively

unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement,' slips

through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting

*Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

## III.

Petitioner's first two claims allege ineffective assistance of trial counsel. The clearly established federal law for such claims is *Strickland v. Washington,* 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). The Supreme Court stated in *Strickland* that "the proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. To establish that counsel's assistance was so defective as to require reversal of a conviction, a convicted person must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Id*. Unless the convicted individual "makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Because of the difficulties inherent in evaluating an attorney's performance,

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id*. (internal citation omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's

actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

## A.

Petitioner alleges that his trial attorney deprived him of effective assistance of counsel by failing to consult, retain, and present an expert witness on the unreliability of the eyewitness' identifications in his case. Petitioner contends that an expert witness was needed to educate the trial court on the counterintuitive factors affecting the reliability of eyewitness identification and the high risk of taint that occurs when eyewitnesses try to identify a suspect. ECF No. 1 at PageID.16. Petitioner attached to his petition an affidavit from a cognitive psychologist who avers that she would have been prepared to testify at Petitioner's trial regarding the problematic factors that were present in the eyewitness identifications in the case. ECF No. 1 at PageID.26–30.

## 1.

Eyewitness identification has inherent dangers. *United States v. Wade*, 388 U.S. 218, 235 (1967). Moreover, expert testimony on eyewitness identification "is now universally recognized as scientifically valid and of 'aid [to] the trier of fact' for admissibility purposes." *Forensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007) (quoting *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)).

Nevertheless, Petitioner "had no constitutional right to an expert witness on eye-witness identification," *Greene v. Lafler*, 447 F. Supp. 2d 780, 795 (E.D. Mich. 2006) (citing *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001)), and the Court must presume that trial counsel's conduct fell "within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of

hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689). "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 563 U.S. at 196 (quoting *Strickland*, 466 U.S. at 689–90). The Court must also "presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Although "[i]t can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts," "[t]here are . . . 'countless ways to provide effective assistance in any given case.'" *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id*. (quoting *Strickland*, 466 U.S. at 689).

## 2.

Of the four complaining witnesses in Petitioner's case, only Cleary and McKinney identified Petitioner at trial as one of the men who approached them and their friends before the shooting. Defense counsel carefully cross-examined both young men. Defense counsel elicited Cleary's testimony that the first time he saw the shooter in person was on the night in question when it was dark outside. ECF No. 9-5 at PageID.226–27. Cleary admitted that he was talking with friends at the time, that he was not looking exclusively at the group approaching him, and that he could not make out any physical features from a distance. *Id*. at PageID.229–30.

Defense counsel elicited Cleary's admission that, in his statement to the police, he described the shooter's height as five feet, eight inches, and that Petitioner was only five feet, four inches in the line-up. *Id*. at PageID.231–33. Defense counsel elicited Cleary's additional testimony

that the shooter was wearing a "hoodie" and that the hoodie covered the shooter's head and the side of his face. *Id*. at PageID.240. Finally, on re-cross examination by defense counsel, Cleary admitted that he waited four days before he showed the police a picture of Petitioner that Cleary had received from someone the day after the shooting. *Id*. at PageID.257.

On cross-examination of McKinney, defense counsel elicited testimony that McKinney did not keep his eyes solely on the group that approached him and his friends before the shooting, because he was talking with other people at the time. *Id*. at PageID.286–87. McKinney also admitted on cross-examination that he noticed the group for only a short time, that it was dark outside at the time, and that McKinney had only seconds to observe the shooter before turning his back to the gunman and running away. *Id*. at PageID.287–89. McKinney further admitted on cross-examination that although he knew Petitioner from high school, he last saw Petitioner a year or two before the shooting. *Id*. at PageID.289–90. Defense counsel subsequently impeached McKinney with his statement to the police in which he said that he never saw the shooter before the night of the shooting. *Id.* at PageID.299–300.

Defense counsel also questioned McKinney about the description of the shooter that he gave to the police. McKinney told the police that the shooter was from five feet, eleven inches to six feet tall, even though Petitioner was not six feet tall. *Id*. at PageID.300–01. On re-cross examination, McKinney admitted to telling the police that the shooter had a medium complexion, whereas at trial, McKinney testified that Petitioner had a medium to dark complexion. *Id*. at PageID.305.

Besides cross-examining the eyewitnesses, defense counsel moved for a directed verdict of acquittal in which he pointed out that the eyewitnesses' description of the shooter did not match

Petitioner. ECF No. 9-6 at PageID.357–58.[2] Defense counsel also made a closing argument in which he argued that the circumstances were not the best for making an identification. Defense counsel pointed out that: the complainants were socializing at the time of the shooting; two of the three men who approached the complainants were wearing hoodies, and one man had covered his face; the complainants viewed the three men in the dark, at a distance of one or two cars; none of the complainants' description of the shooter's height approximated Petitioner's stature, and they could not agree on the shooter's complexion or provide any further details about the shooter's physical characteristics. Defense counsel also noted that the complainants initially failed to provide the police with information about where they may have seen the shooter in the past, and that they may have acquired the picture of Petitioner from a third party whose motives were unknown. *Id*. at PageID.365–69. Defense counsel concluded his argument by stating that, based on the difficulty in making an accurate description of the shooter, there was no proof beyond a reasonable doubt, and the court should find Petitioner not guilty. *Id*. at PageID.369.

Defense counsel's manner of challenging the witnesses' identification through argument and cross-examination of witnesses was reasonable, and the lack of testimony from an expert witness on eyewitness identification cannot overcome the presumption that defense counsel provided reasonable professional assistance. *See Burt v. Titlow*, 571 U.S. 12, 23 (2013) (stating that "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance'" (quoting *Strickland*, 466 U.S. at 689)). Defense counsel "was entitled to formulate a strategy that was reasonable at the time and

---

[2] The trial court denied the motion because Cleary and McKinney had identified Petitioner as the shooter. *Id*. at PageID.359.

to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 107.

Although an expert witness may have been helpful, the trial judge was an experienced jurist, and his questions to witnesses and findings of fact indicate that he was aware of the dangers associated with eyewitness testimony. He also understood that the prosecution had to prove beyond a reasonable doubt that Petitioner was the shooter. ECF No. 9-6 at PageID.380–81.

The Court concludes that defense counsel's performance was not deficient, and there is not a reasonable probability that the outcome of the trial would have been different if defense counsel had produced an expert witness on eyewitness testimony, because the trial court relied on the fact that Cleary and McKinney were acquainted with Petitioner before the shooting. *Id*. at PageID.381. The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland* or *Richter,* and given the deference due to the state court's decision under both AEDPA, Petitioner is not entitled to relief on his claim.

**B.**

Petitioner alleges next that his trial attorney was ineffective for failing to impeach Cleary with his prior testimony that the police told him which person to pick in a line-up. ECF No. 1 at PageID.18. The Michigan Court of Appeals disagreed with this claim. The Court of Appeals stated that "defense counsel may have reasonably concluded that attempting to attack the credibility of Cleary's identification by suggesting that he selected defendant from the lineup only because the police told him to would have been unpersuasive." *Yelder*, 2016 WL 1445318, at *4. The Court of Appeals concluded that, "[w]hile defense counsel arguably could have . . . attempted to attack the credibility and reliability of Cleary's identification with his preliminary examination testimony,

-12-

counsel's failure to cross-examine Cleary regarding every contradictory aspect of his testimony and prior statements does not constitute ineffective assistance of counsel." *Id*.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)). "[I]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*. at 872 (citing *Johnson v. Hofbauer*, 159 F. Supp.2d 582, 607 (E.D. Mich. 2001)).

Cleary stated at one point during the preliminary examination that an officer told him to pick number three (Petitioner) in the lineup. ECF No. 9-2 at PageID.143–44. At trial, Cleary testified that the police officer had not told him whom to pick and that the officer simply asked him to pick the person that he thought had done the shooting. ECF No. 9-5 at PageID.224, 226. That may have been what Cleary was trying to say at the preliminary examination when he testified that the officer told him to write down the number of the person who did the shooting. ECF No. 9-2 at PageID.143-44.

Defense counsel could have concluded that it was not worthwhile attempting to impeach Cleary with his testimony at the preliminary examination. It was Cleary, after all, who brought a picture of Petitioner to the police, and he testified at one point in the preliminary examination that the police did *not* tell him which person in the line-up was the shooter. *Id*. at PageID.142.

Even if defense counsel's failure to cross-examine Cleary about his testimony at the preliminary examination amounted to deficient performance, counsel's performance could not have prejudiced the defense. As pointed out above, defense counsel challenged Cleary's testimony in other ways and argued to the trial court that the prosecution had not proved its case beyond a

reasonable doubt. Cleary, moreover, testified on re-direct examination that he picked Petitioner at the line-up because he saw Petitioner shooting a firearm on the night in question. ECF No. 9-5 at PageID.248.

Thus, defense counsel's failure to attempt to impeach Cleary with his testimony at the preliminary examination did not amount to deficient performance. Even if counsel's performance was deficient, there is not a substantial likelihood that the result of the trial would have been different if counsel had attempted to impeach Cleary with his prior testimony. The state appellate court's rejection of Petitioner's claim was objectively reasonable, and given the deference due to defense counsel under *Strickland* and to the state court's decision under AEDPA, Petitioner is not entitled to relief on his claim.

## C.

Petitioner's third claim alleges that the trial court abused its discretion by finding him guilty of AWIM when there was no evidence of an intent to kill. ECF No. 1 at PageID.20–21. In his fourth claim, Petitioner alleges that the trial court abused its discretion by permitting the prosecutor to (1) bolster and vouch for her witnesses and (2) elicit a witness's prior consistent statements. *Id*. at PageID.21–22. Finally, in his fifth claim, Petitioner alleges that his trial attorney's substandard performance in failing to assert all substantial defenses and his appellate attorney's failure to raise all his claims on direct appeal were "cause" for his failure to raise all his claims on appeal or in a prior motion. He also claims that he suffered actual prejudice from the irregularities that support his claims for relief. *Id*. at PageID.23–24. Respondent contends that claims three through five are procedurally defaulted. ECF No. 8 at PageID.104–08. The Court agrees for the following reasons.

**1.**

Claims three, four, and five implicate the exhaustion and procedural default requirements for habeas corpus cases. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996) (stating that the petitioner's failure to raise a claim in state court implicated the requirements in habeas of exhaustion and procedural default). The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they present their claims to a federal court in a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

The exhaustion requirement is satisfied if the prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the State's highest court "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan,* 526 U.S. at 845, 847. Thus, to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his claims to the state court of appeals and to the state supreme court before raising the claims in a federal habeas corpus petition. *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009).

Petitioner raised claims three through five in his Motion for Relief from Judgment and in his subsequent application for leave to appeal in the Michigan Court of Appeals. He did not fairly present those claims to the Michigan Supreme Court. Although he attempted to file an application for leave to appeal in the Michigan Supreme Court, a deputy clerk for the Michigan Supreme Court rejected his application as untimely. Petitioner, therefore, did not exhaust state remedies for claims three through five. He asks the Court to review his claims under the exception to the exhaustion rule for "an absence of available State corrective process." ECF No. 1 at PageID.22 (citing 28 U.S.C. § 2254(b)(1)(B)(i)).

-15-

The exhaustion requirement, however, refers only to remedies still available at the time of the federal petition, and it is satisfied if the habeas petitioner's claims are now procedurally barred under state law, "unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 161–62. In other words,

> [e]xhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction.  If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *accord Carruthers v. Mays*, 889 F.3d 273, 288 (6th Cir. 2018) (stating that, when a claim is unexhausted, but no state remedy remains available, the claim is procedurally defaulted, and a federal habeas court may not review the claim without a showing of cause and actual prejudice), *cert. denied*, 139 S. Ct. 1173 (2019); *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) (stating that "[i]f the petition[er] fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default").

Petitioner's third, fourth, and fifth claims are barred from review in the Michigan Supreme Court. Therefore, Petitioner must show "cause" for his procedural error and actual prejudice.

## 2.

Petitioner alleges in his fifth claim that his appellate attorney was the reason that he could not present all his claims in state court. ECF No. 1 at Page.ID.24. But "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (emphasis in original). And a claim of ineffective assistance of counsel must first be raised and exhausted in

state court as an independent claim before it may be used to establish cause for a procedural default. *Id*. at 450–53.

Furthermore, the Court's procedural-default analysis is based on Petitioner's failure to file a timely application for leave to appeal in the state supreme court on collateral review.[3] At the time, Petitioner was proceeding *in propria persona*, and the failure to file a timely application for leave to appeal in the Michigan Supreme Court was his due to his own error.

Petitioner attempts to excuse his error by stating that he mailed his appellate application to the wrong court, and when he tried to correct his mistake, the Michigan Supreme Court would not accept the late application. ECF No. 1 at PageID.10–11. The Supreme Court, however, has made clear that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In other words, "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). Thus, filing a pleading in the wrong court cannot be considered "cause" for Petitioner's procedural error. *See Sears v. Maryland*, 2017 WL 2778819, at *5 (D. Md. June 26, 2017) (concluding that the petitioner's mistake of filing a petition in the wrong court could not constitute cause for his procedural default)**;** *Threet v. Dowling*, 2015 WL 1438110, at *19 n.13 (N.D. Okla. Mar. 27, 2015) (stating that if the petitioner filed a notice of intent to appeal in the

---

[3] The Court is not relying on the state trial court's denial of Petitioner's motion for relief from judgment under Michigan Court Rule 6.508(D)(3).  Rule 6.508(D)(3) generally prohibits a state trial court from granting relief from judgment if the defendant's grounds for relief could have been raised on appeal or in a previous motion for relief from judgment unless the defendant shows "good cause" for the failure to do so and "actual prejudice from the alleged irregularities that support the claim for relief."

wrong court, his mistake did not constitute cause for his procedural default)**;** *Bohannon v. Brunsman*, 2006 WL 2860985, at *11 (S.D. Ohio Oct. 4, 2006) (stating that the petitioner's inadvertent error of filing a notice of appeal in the wrong court was insufficient to constitute cause for his procedural default in the direct appeal proceedings).

The Court need not determine whether Petitioner was prejudiced by his procedural error because he has not shown "cause" for the error. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that the Court's failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496). The actual-innocence gateway "is a narrow one" that "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)), *cert. denied*, 139 S. Ct. 1619 (2019). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Although Petitioner maintained his innocence at his sentencing, *see* ECF No. 9-7 at PageID.394, he has not presented the Court with any new evidence of actual innocence. Therefore,

a miscarriage of justice will not result from the Court's failure to adjudicate claims three, four, and five on the merits.

In summary, Petitioner's third, fourth, and fifth claims are procedurally defaulted, and the state appellate court's adjudication of his first two claims on the merits is not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

**IV.**

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

It is further **ORDERED** that Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision because he was permitted to proceed without prepayment of the fees and costs for this action, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Dated: March 22, 2021                                   s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to Jaylen M. Yelder #926738, Thumb Correctional Facility, 3225 John Conley Drive, Lapeer, MI 48446 by first class U.S. mail on March 22, 2021.

s/Kelly Winslow
KELLY WINSLOW, Case Manager